**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SOUTHERN CALIFORNIA ALLIANCE OF PUBLICLY OWNED TREATMENT WORKS, | No. 14-74047 |
| *Petitioner*, | OPINION |
| v. | |
| U.S. ENVIRONMENTAL PROTECTION AGENCY; JARED BLUMENFELD, Regional Administrator, USEPA, Region IX, | |
| *Respondents.* | |

On Petition for Review of an Order of the
Environmental Protection Agency

Argued and Submitted November 7, 2016
Pasadena, California

Filed April 12, 2017

Before: Kim McLane Wardlaw and Jay S. Bybee, Circuit
Judges, and Robert Holmes Bell,[*] District Judge.

Opinion by Judge Bybee

---

[*] The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

## SUMMARY[**]

### Environmental Law

The panel dismissed for lack of subject matter jurisdiction the petition for review brought by the Southern California Alliance of Publicly Owned Treatment Works, challenging an Objection Letter sent by the United States Environmental Protection Agency (EPA) regarding draft permits for water reclamation plants in El Monte and Pomona, California.

The Clean Water Act prohibits the discharge of any pollutant into navigable waters from any point source without a permit, and permits are issued in accordance with the National Pollutant Discharge Elimination System (NPDES). When a state assumes primary responsibility for issuing NPDES permits, the EPA retains supervisory authority over state permitting programs under 33 U.S.C. § 1324(d).

In 1973, the EPA granted California authority to administer its NPDES permits program. The Los Angeles Regional Office of the California State Water Resources Control Board prepared the draft NPDES permits for the water reclamation plants at issue. The EPA issued an Objection Letter to the draft permits raising concerns about the effluent toxicity. The Los Angeles Board revised the draft permits to meet the terms of the EPA's Objection Letter, and issued the permits.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Petitioners argued that the draft permits were consistent with the Clean Water Act and that the EPA exceeded its authority in requiring water quality-based effluent limitations for whole effluent toxicity and other limitations.

The panel held that neither 33 U.S.C. § 1369(b)(1)(E) nor (F) of the Clean Water Act provided the court with subject matter jurisdiction to review the Objection Letter. The panel held that when a state assumes responsibility for administering the NPDES program, the state becomes the permit-issuing authority, and an EPA objection to a draft permit is merely an interim step in the state permitting process. The panel held that here, the Los Angeles Board chose to revise the draft permits and retain control of the NPDES permitting process for the plants, and the permits were issued through the State of California, not the EPA. The panel concluded that the appropriate avenue for petitioners to seek redress was through the State's review process.

## COUNSEL

Melissa Thorme (argued), Downey Brand LLP, Sacramento, California, for Petitioner.

Eileen T. McDonough (argued), Attorney; John C. Cruden, Assistant Attorney General; Environment Defense Section, Environment and Natural Resources Division, United States Department of Justice, Washington, D.C.; Marcela von Vacano, Assistant Regional Counsel, Region 9, United States Environmental Protection Agency, San Francisco, California; Pooja S. Parikh, Attorney-Advisor, Office of the General Counsel, United States Environmental Protection Agency, Washington, D.C.; for Respondents.

## OPINION

BYBEE, Circuit Judge:

The Southern California Alliance of Publicly Owned Treatment Works (SCAP) petitions for review of an objection letter sent by the United States Environmental Protection Agency (EPA) regarding draft permits for water reclamation plants in El Monte and Pomona, California. SCAP argues that we have original jurisdiction to review the objection letter under 33 U.S.C. § 1369(b)(1)(E), which applies to EPA action "approving or promulgating any effluent limitation," and 33 U.S.C. § 1369(b)(1)(F), which applies to EPA action "issuing or denying any permit." We agree with EPA that we lack subject matter jurisdiction to hear SCAP's claims, and we dismiss the petition.

## I. BACKGROUND

A. *The Clean Water Act*

In 1972, Congress enacted sweeping amendments to the Federal Water Pollution Control Act (FWPCA) of 1948 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). After another round of substantial amendments in 1977, the statute became known as the Clean Water Act (CWA or the Act). The CWA prohibits the discharge of any pollutant into navigable waters from any point source without a permit. *Id.* § 1311(a). Permits are issued in accordance with the National Pollutant Discharge Elimination System (NPDES). *Id.* § 1342(a). These permits authorize certain point source discharges and are typically conditioned on compliance with

water quality standards and effluent limitations issued under the Act. *Id.* § 1342(a).

The CWA establishes two pathways for the issuance of NPDES permits. First, EPA may issue the permits under 33 U.S.C. § 1342(a). Second, the states, with EPA approval, may assume responsibility for issuing permits. *Id.* § 1342(b). The state program must meet specific requirements, including incorporating certain provisions of the NPDES regulations, and be approved by EPA. *Id.*; 40 C.F.R. §§ 123.25(a)(15), 122.44. "If [NPDES permitting] authority is transferred, then state officials—not the federal EPA—have the primary responsibility for reviewing and approving NPDES discharge permits, albeit with continuing EPA oversight." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 650 (2007). Forty-six states, including California, currently have authority to issue their own NPDES permits. EPA, NPDES State Program Information, https://www.epa.gov/npdes/ npdes-state-program-information (follow: "Authority" hyperlink).

Even when a state assumes primary responsibility for issuing NPDES permits, EPA retains supervisory authority over state permitting programs under 33 U.S.C. § 1342(d). The state must transmit to EPA a copy of each permit application received, as well as proposed permits, and EPA has ninety days to notify the state of any objections it has to the draft permit. *Id.* § 1342(d)(1)–(2). The objection must be in writing and state "the reasons for such objection and the effluent limitations and conditions which such permit would include if it were issued by" EPA. *Id.* § 1342(d)(2). If the disagreement proves intractable, the state or any interested person can request that EPA hold a public hearing on the objection. *Id.* § 1342(d)(4); 40 C.F.R. § 123.44(e).

Following a public hearing, EPA may reaffirm, withdraw, or modify the original objection. 40 C.F.R. § 123.44(g). If the state does not request a hearing or EPA maintains its objection, the state then has a choice: It can either revise the permit to address EPA's objection or allow permitting authority to pass back to EPA. 33 U.S.C. § 1342(d)(4); *see also* 40 C.F.R. § 123.44(h).

The state's decision either to make the changes and retain jurisdiction over the permit or to relinquish permitting authority to EPA has practical consequences for further review. If the state chooses to revise and issue a permit, an aggrieved party can seek further administrative review and then judicial review in accordance with state law. *See Am. Paper Inst., Inc. v. EPA*, 890 F.2d 869, 875 (7th Cir. 1989). By contrast, if jurisdiction returns to EPA and EPA issues a federal NPDES permit, EPA's decision may be appealed within EPA to the Environmental Appeals Board (EAB). 40 C.F.R. § 124.19(a)(1). A final EPA permit approved by the EAB is subject to review in an appropriate circuit court of appeals. 33 U.S.C. § 1369(b)(1)(F).

B. *California's NPDES Permitting Program*

In 1973, EPA granted California authority to administer the NPDES permits program. Approval of California's Revisions to the State National Pollution Discharge Elimination System Program, 54 Fed. Reg. 40,664 (Oct. 3, 1989); Discharges of Pollutants to Navigable Waters: Approval of State Programs, 39 Fed. Reg. 26,061 (July 16, 1974). Regional Boards make the initial permitting decisions. The California State Water Resources Control Board (State Board), the final NPDES permitting authority in California, reviews the permits issued by Regional Boards. "[A]ny

aggrieved party" may then file a petition for review in California Superior Court.  Cal. Water Code § 13330(a).

Additionally, California and EPA have entered into a Memorandum of Agreement that explains in greater detail the rights the State has under the Act and the regulations.  Under that agreement, for example, if the State disagrees with EPA's objection, it has the option to pursue informal means of resolving the dispute.  *See*, *e.g.*, NPDES Memorandum of Agreement Between U.S. Environmental Protection Agency and California State Water Resources Control Board 16 (1989) (MOA) ("If EPA and a Regional Board are unable to resolve a disagreement over provisions of a prenotice draft permit to which EPA has filed a formal objection, the State Board may mediate the disagreement to a resolution that is satisfactory to EPA and to the Regional Board.").  Once EPA has filed an objection letter, the State may request that EPA conduct a public hearing pursuant to 40 C.F.R. § 123.44 or opt to conduct its own public hearing.  *Id.* at 16–17.  The MOA, like the regulations, contemplates that, following this process, EPA may modify or even withdraw its objections. *Id.* at 19.

C.  *The Permits at Issue*

The Whittier Narrows Water Reclamation Plant, located in El Monte, California, and the Pomona Water Reclamation Plant, located in Pomona, California (collectively, the Plants), are tertiary-level treatment water reclamation facilities that receive industrial, commercial, and residential wastewater

from the surrounding cities.[1]   They each produce approximately 9000 acre-feet of recycled water per year, which is used for groundwater recharge and landscape irrigation in Southern California.

The Los Angeles Regional Office (L.A. Board) of the State Board prepared the draft NPDES permits (Draft Permits) for the Plants at issue.  The L.A. Board also prepared a "Fact Sheet," which included its determination that effluent limitations were required for "whole effluent toxicity"[2] because the discharge potentially could cause or contribute to chronic toxicity.  The Draft Permits addressed chronic toxicity by setting "Chronic Toxicity Trigger and Requirements" (Toxicity Triggers).

The L.A. Board submitted the Draft Permits to EPA for review consistent with 33 U.S.C. § 1342(d)(1).   Jane Diamond, the Region 9 Director of EPA's Water Division, issued a letter with EPA's formal objections to the Draft Permits on September 4, 2014 ("Objection Letter").  EPA's principal concern "relate[d] to numeric effluent limitations for whole effluent toxicity."   EPA criticized the permits because they "express a chronic toxicity requirement as a series of steps which include a narrative trigger for further investigation of effluent toxicity, not as an effluent limitation

---

[1] Tertiary treatment plants produce water meeting drinking water standards required by the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq*.

[2] "Whole effluent toxicity" (sometimes referred to as WET) refers to the fact that effluent can contain many different pollutants.  Even if no one pollutant is likely to cause harm to aquatic organisms, the combination of several pollutants may have an adverse result.  *See Edison Elec. Inst. v. EPA*, 391 F.3d 1267, 1268–69 (D.C. Cir. 2004).

for WET. . . . Taken together, these toxicity triggers simply require further investigation, and thus do not met meet the definition of 'effluent limitation' under the CWA . . . ." EPA offered other criticism as well and attached to its letter what it characterized as "Required Changes" and "Recommended Changes" in the permits. EPA stated that if the L.A. Board did not submit revised permits addressing EPA's concerns, EPA would "acquire exclusive NPDES authority over the discharges pursuant to 40 C.F.R. § 123.44(h)(3)."

The L.A. Board revised the Draft Permits to meet the terms of EPA's Objection Letter. After reviewing the revised permits, EPA notified the L.A. Board, the State Board, and the permit applicants that EPA's objections had been satisfied and that the NPDES permits for the Plants remained within the L.A. Board's jurisdiction. After complying with procedures required by state law, the L.A. Board issued the permits for both Plants in November 2014.

D. *State Administrative Proceedings*

On December 8, 2014, SCAP, along with the permittees and other parties, filed an administrative appeal of the L.A. Board's action with the State Board. The petition requested a hearing and a stay of the NPDES Permits. Three weeks later, on December 31, 2014, SCAP also filed a petition for review before us.

The State Board did not immediately act on SCAP's administrative petition. On July 9, 2015, the L.A. Board amended the NPDES permits for the Plants. SCAP amended its administrative petition in light of the amended permits. SCAP then requested that the State Board hold the state administrative appeals in abeyance until 2017. SCAP stated

that its request would "allow the opportunity for resolution of these matters and for further discussion and exchanges between the Petitioners and the [L.A. Board]." The State Board granted SCAP's request and placed the matter in abeyance until August 10, 2017.

## II. DISCUSSION

SCAP seeks review of EPA's September 4, 2014 Objection Letter. SCAP argues the original permits proposed by the L.A. Board were consistent with the CWA and that EPA exceeded its authority in requiring water quality-based effluent limitations for whole effluent toxicity, numeric effluent limitations, and daily maximum effluent limitations. In response, EPA contends that we lack jurisdiction to review its Objection Letter and that, so long as permitting authority rests with California state agencies, SCAP's judicial remedy lies in California courts under California's administrative procedures. We review challenges to our jurisdiction *de novo*. *Bidart Bros. v. Cal. Apple Comm'n*, 73 F.3d 925, 928 (9th Cir. 1996).

The CWA vests the federal courts of appeals with original jurisdiction over seven categories of EPA action. 33 U.S.C. § 1369(b)(1).

> We do not lightly hold that we have jurisdiction under [33 U.S.C. § 1369(b)(1)]. We have counseled against [its] expansive application. The specificity and precision of section [1369], and the sense of it, persuade us that it is designed to exclude EPA actions that Congress did not specify. Indeed, [n]o

> sensible person . . . would speak with such detail otherwise.

*Nw. Envtl. Advocates v. EPA*, 537 F.3d 1006, 1015 (9th Cir. 2008) (second and fourth alterations in original) (citations omitted) (internal quotation marks omitted). SCAP asserts two bases for our jurisdiction. First, it claims that EPA promulgated new daily and numeric effluent limitations for chronic toxicity through the Objection Letter, giving our court jurisdiction under 33 U.S.C. § 1369(b)(1)(E). Second, SCAP claims that we have jurisdiction under 33 U.S.C. § 1369(b)(1)(F) because the Objection Letter was the "functional equivalent" of EPA's denial of the state-proposed Draft Permits.

Neither provision gives us jurisdiction to review the Objection Letter. When a state assumes responsibility for administering the NPDES program, the state becomes the permit-issuing agency. 33 U.S.C. § 1342(b). An objection by EPA to a draft state permit is merely an interim step in the state permitting process. *Id.* EPA may decide to withdraw the objection after discussions with the state and regional board or after holding a public hearing, or the state may revise a draft permit to remedy EPA's objection and issue the permit. *Id.* In either case, the permitting decision remains the state's. The permits issued by the state are subject to administrative and judicial review in accordance with state law. *See*, *e.g.*, Cal. Water Code § 13330 (providing for review in California Superior Court of State Board decisions). Alternatively, the state can choose not to remedy the objection and let permitting authority pass back to EPA. 33 U.S.C. § 1342(d)(4). In that case, the state has relinquished jurisdiction over the permitting process, and EPA assumes full responsibility for the permit. If EPA issues

the permit, the permit is subject to review by the EAB first and then the appropriate federal court of appeals. *City of San Diego v. Whitman*, 242 F.3d 1097, 1101 (9th Cir. 2001). Here, the L.A. Board chose to revise the Draft Permits and retain control of the NPDES permitting process for the Plants, and the permits were issued through the State of California, not EPA. The appropriate avenue for SCAP to seek redress is through the State's review process. We explain our reasons in greater detail below.

A. *Jurisdiction Under 33 U.S.C. § 1369(b)(1)(E)*

Section 1369(b)(1)(E) provides for federal appellate review of EPA action "in approving or promulgating any effluent limitation or other limitation under section 1311, 1312, 1316, or 1345 of this title." Relying on a decision of the Eighth Circuit, SCAP contends that EPA's objection effectively promulgated new effluent limitations and is reviewable under § 1369(b)(1)(E). *See Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013). EPA counters that we have already considered and rejected SCAP's argument. *See Crown Simpson Pulp Co. v. Costle*, 599 F.2d 897 (9th Cir. 1979) (*Crown Simpson I*), *rev'd in part*, 445 U.S. 193 (1980) (per curiam) (*Crown Simpson II*). EPA is correct. Following our circuit's decision in *Crown Simpson I*, we hold that we lack jurisdiction to review the Objection Letter under § 1369(b)(1)(E).[3]

_____

[3] The Supreme Court reversed our decision only with respect to jurisdiction under 33 U.S.C. § 1369(b)(1)(F). *See infra* Part II.B. It declined to consider that portion of our decision addressing § 1369(b)(1)(E). *Crown Simpson II*, 445 U.S. at 196 n.7 ("Because we find that the Court of Appeals had jurisdiction over this action under § [1369](b)(1)(F), we do not decide whether it might also have had jurisdiction under § [1369](b)(1)(E)."). Our decision with respect to

In *Crown Simpson I*, we held that 33 U.S.C. § 1369(b)(1)(E) does not provide jurisdiction over a claim like SCAP's. Similar to this case, *Crown Simpson I* involved a challenge to EPA's veto of NPDES permits that the California State Board proposed to issue to bleached kraft pulp mills pursuant to 33 U.S.C. § 1342(b). Crown Simpson argued that EPA's veto was "the functional equivalent of a newly promulgated, generalized regulation" and that "if the Administrator had formally promulgated such a generalized variance regulation, it would have been directly reviewable by the court of appeals as an 'effluent or other limitation' under subsection (E)." *Id.* at 900. We simply rejected the premise that the "Administrator's vetoing of the two permits was tantamount to the promulgation of a new variance regulation." *Id.* at 901. We characterized EPA's actions as "not the establishment of new regulations through an irregular procedure, but simply two individualized adjudications to determine the proper application of already promulgated effluent limitation regulations covering the entire industry." *Id.* We concluded that "[s]ubsection (E) provides for direct review of the promulgation of effluent limitations, not for direct review of all of the Administrator's actions that may in any way be dependent upon the Administrator's power to promulgate such limitations." *Id.* at 902.

*Crown Simpson I* is controlling in this case. The statutory regime differentiates between the promulgation of effluent limitation regulations, which are "standards restricting the quantities of pollutants that enterprises in a given industry

---

33 U.S.C. § 1369(b)(1)(E) is still binding precedent in our circuit absent intervening higher authority that is clearly irreconcilable with our existing precedent. *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc).

may discharge," and "individualized adjudications to determine the proper application of already promulgated . . . regulations covering the entire industry." *Id.* at 901–02. Here, as in *Crown Simpson I*, EPA did not "approve or promulgate anything" in objecting to the Draft Permits. *Id.* at 900, 902 (internal quotation marks omitted). Instead, it applied preexisting regulations on an individualized basis to determine that the Draft Permits were inadequate. *See id.* at 901. "The two permits and variances at issue here have no . . . far reaching implications" beyond their effect on the Plants, as compared to "generalized effluent limitations," which "may affect dozens or even hundreds of plants." *Id.* at 902. Our precedent therefore compels the conclusion that we lack jurisdiction under § 1369(b)(1)(E).

Petitioners urge us to follow the Eighth Circuit's decision in *Iowa League of Cities*, 711 F.3d 844. In that case the Iowa League of Cities (the League) believed that EPA had imposed new requirements for water treatment processes and that it was doing so without promulgating regulations. At the League's request, U.S. Senator Charles Grassley wrote to EPA. EPA responded in two guidance letters. The League, believing that the guidance letters were inconsistent with the CWA and EPA's own regulations, brought a challenge in the Eighth Circuit under 33 U.S.C. § 1369(b)(1)(E). EPA argued that the court lacked subject matter jurisdiction, but the Eighth Circuit held that the guidance letters not only had a "binding effect on regulated entities," 711 F.3d at 863, but that "communications from the EPA indicat[ed] that it would object to any permits that were inconsistent with the policy outlined in the EPA letters," *id.* at 864. On that understanding, the court held that EPA's letters "were promulgations for the purposes of CWA section

[1369](b)(1)(E)," *id.* at 866, and should be reviewed under the APA, *id.* at 872–78.

To the extent *Iowa League of Cities* is inconsistent with our decision in *Crown Simpson I*, we are, of course, bound by *Crown Simpson I*. Moreover, there are other reasons to distinguish this case from *Iowa League of Cities*. Unlike the Iowa case, EPA here was commenting specifically on the Draft Permits submitted by the Plants, consistent with 33 U.S.C. § 1342(d)(1). EPA was not responding to a more general inquiry about its "binding policy," and nothing in the EPA comments suggest that it was proposing objections applicable to "any permits that were inconsistent with the policy outlined in the EPA letters." *Iowa League of Cities*, 711 F.3d at 865. We need not decide whether we would agree with the Eighth Circuit's decision in *Iowa League of Cities* in other circumstances. Those circumstances are not presented to us in this case.

There are other features of our case that persuade us that we may not review EPA's Objection Letter. First, unlike with the guidance letters to Senator Grassley in *Iowa League of Cities*, EPA here was participating in an interim step in a complex statutory scheme. Under the scheme, EPA's Objection Letter was not a binding order to the L.A. Board. To be sure, EPA notified the L.A. Board that if it did not make the changes EPA wanted EPA would assume jurisdiction over the NPDES permits. Nonetheless, the L.A. Board was given the option of adopting EPA's required changes or ceding permitting jurisdiction to EPA.[4] And no

---

[4] Even if EPA had assumed jurisdiction, the Objection Letter would still not be a final order. Permits issued by EPA must follow numerous procedural requirements outlined in 40 C.F.R. § 124.1–124.21,

matter what the L.A. Board decided—whether to ignore or to adopt EPA's requested changes—there was going to be an opportunity in due course for court review. *Cf. City of San Diego*, 242 F.3d at 1101–02 (holding that EPA letter regarding the city's as-yet-unfiled application for renewal of a modified NPDES permit was not reviewable until EPA actually issued the permit in question).

Under the Act's scheme of cooperative federalism, if the L.A. Board refused to make EPA's required changes, EPA would assume jurisdiction and, presumably, issue its own permits. The petitioners could then have filed a petition for review first before the EAB and then in this court and challenged the substance of the EPA-issued permits. Because, however, the L.A. Board acquiesced to EPA's requests, the Plants may pursue available state remedies, including review by the State Board, in the California courts, and, potentially, in the U.S. Supreme Court. *See Am. Paper Inst.*, 890 F.2d at 875; *cf. S.D. Warren Co. v. Me. Bd. of Envtl. Prot.*, 547 U.S. 370, 375 (2006) (reviewing state court decision regarding conditions placed in permit by state environmental agency under 33 U.S.C. § 1341); *PUD No. 1 of Jefferson Cty. v. Wash. Dep't of Ecology*, 511 U.S. 700 (1994) (same).

There is a another reason for us to decline to exercise jurisdiction at this stage in the process. Under the CWA, California may impose restrictions that exceed the CWA's

---

124.51–124.66. The Plants would have had the right to submit written comments and seek a hearing before EPA, 40 C.F.R. § 124.11, the right to an administrative appeal to the EAB, *id.* § 124.19(a)(1), and the right to review under the APA in a federal court of appeals, 33 U.S.C. § 1369(b)(1)(F).

minimum requirements and EPA's regulations. 33 U.S.C. §1370; 40 C.F.R. § 122.44(d). The L.A. Board (or the State Board) may take a more aggressive view of the requirements for keeping the state's waters clean. In that circumstance, any request for review of EPA's Objection Letter would be moot because California water regulators may determine that the discharges at issue exceed the requirements of state water quality standards. 40 C.F.R. § 122.44(d). EPA's views, in that case, are irrelevant, and a petitioner's remedies, if any, lie with the State Board and the California courts. We have no business getting into the middle of this process.

We have no jurisdiction to review EPA's Objection Letter under § 1369(b)(1)(E).

B. *Jurisdiction Under 33 U.S.C. § 1369(b)(1)(F)*

Section 1369(b)(1)(F) provides for review of an EPA action "issuing or denying any permit under section 1342." SCAP urges us to find that EPA's Objection Letter effectively denied the permits sought by the Plants and tentatively approved by the L.A. Board. For authority, SCAP points to the Supreme Court's decision in *Crown Simpson II*. In that case, the Supreme Court held that under the 1972 version of the CWA, when EPA "objects to effluent limitations contained in a state-issued permit, the precise effect of its action is to 'den[y]' a permit within the meaning of § [1369](b)(1)(F)." 445 U.S. at 196 (first alteration in original). EPA argues that *Crown Simpson II* is not applicable because Congress amended the CWA in 1977 and revised the procedures relating to EPA supervisory authority of state NPDES permitting. Although the Supreme Court in *Crown Simpson II* was aware of the 1977 CWA amendments, it expressly declined to consider their impact on the

jurisdictional question before it, because the EPA objection at issue occurred before the amendments took effect. *Id.* at 194 n.2 ("Section [1342] was amended in 1977, after the permits in the present case were vetoed, to give EPA the power, which it did not then have, to issue its own permit if the State fails to meet EPA's objection within a specified time. We do not consider the impact, if any, of this amendment on the jurisdictional issue presented herein." (citation omitted)). Since *Crown Simpson II*, neither the Supreme Court nor we have addressed the interaction of 33 U.S.C. § 1342(d) and § 1369(b)(1)(F). Doing so now for the first time, we conclude that the Objection Letter did not constitute the "issu[ance] or den[ial]" of the Draft Permits at issue, and we do not have jurisdiction under § 1369(b)(1)(F).

In our view, the 1977 amendments significantly changed the CWA. Section 1342(d)(2), as enacted in 1972 and construed by the Court in *Crown Simpson II*, provided:

> No permit shall issue (A) if the Administrator within ninety days of the date of his notification under subsection (b)(5) of this section objects in writing to the issuance of such permit, or (B) if the Administrator within ninety days of the date of transmittal of the proposed permit by the State objects in writing to the issuance of such permit as being outside the guidelines and requirements of this Act.

Pub. L. 92-500, § 2, 86 Stat. 816, 882 (1972) (CWA § 402(d)(2)). Under this version of the statute, once EPA objected to a state permit, the permit could not be issued unless the state revised it to remedy EPA's objection. And if

the state refused to address EPA's objection, EPA and the state were at an impasse: "No permit shall issue . . . ." At that point neither the state nor EPA had authority to issue a permit. In this scheme, EPA's objection was "functionally similar to its denial of a permit." *Crown Simpson II*, 445 U.S. at 196. The Court expressed concern that "denials of NPDES permits would be reviewable at different levels of the federal-court system depending on the fortuitous circumstances of whether the State in which the case arose was or was not authorized to issue permits." *Id.* at 196–97. Additionally, the Court thought that "the additional level of judicial review in those States with permit-issuing authority would likely cause delays in resolving disputes under the Act." *Id.* at 197. The Court thought such a "bifurcated system" was "seemingly irrational." *Id.* However, it added that its conclusion was based in part on the absence of "a far clearer expression of congressional intent." *Id.*

That "clearer expression of congressional intent" came in the form of the 1977 CWA amendments. In 1977, Congress amended the CWA and added § 1342(d)(4). It reads:

> In any case where, after December 27, 1977, the Administrator, pursuant to paragraph (2) of this subsection, objects to the issuance of a permit, on request of the State, a public hearing shall be held by the Administrator on such objection. If the State does not resubmit such permit revised to meet such objection within 30 days after completion of the hearing, or, if no hearing is requested within 90 days after the date of such objection, the Administrator may issue the permit pursuant to subsection (a) of this section for such

> source in accordance with the guidelines and
> requirements of this chapter.

Pub. L. 95-217, § 65, 91 Stat. 1566, 1604 (1977).  In contrast to the prior iteration of the statute, which made EPA's objection binding, the amended statute creates a process in which the state can request a hearing, following which there is additional opportunity for back and forth between the state and EPA.  *See* 33 U.S.C. § 1342(d)(4); 40 C.F.R. § 123.44(e), (g).  The state then has the choice to issue the permit with EPA's requested changes or to allow jurisdiction over the permitting process to return to EPA.  The amendment resolves the impasse that occurred under the prior scheme when EPA objected to a permit and the state chose not to modify the permit to remedy EPA's objection.  *See Crown Simpson II*, 445 U.S. at 194 n.2 ("Section [1342] was amended in 1977 . . . to give EPA the power, which it did not then have, to issue its own permit if the State fails to meet EPA's objection within a specified time.").

The 1977 Amendments alter the permit-approval process so that an EPA objection no longer automatically and finally results in the denial of a permit if the state refuses to conform to EPA's request.  EPA's objections are now part of an ongoing process, not the end of the process.  Thus, complaints about an EPA Objection Letter are premature because when EPA objects to a permit, the administrative process is not yet at an end:  The state and EPA may resolve their dispute over the objection informally, *see*, *e.g.*, MOA at 16; the state may request that EPA hold a public hearing, or hold its own public hearing, after which EPA may reaffirm, withdraw, or modify its objection, 40 C.F.R. § 123.44(g); MOA at 16–17; the state may decide to modify the permit, and EPA may accept the modifications; or the state may

decide not to act or refuse to accept EPA's modifications, and EPA may then issue the permit on its own authority, 40 C.F.R. § 123.44(h); MOA at 19–20. In sum, under the current scheme, an objection by EPA is no longer "functionally similar" to denying a permit outright, because there are other procedures still available to the interested parties before the state denies the permit. And, if the state chooses not to adopt the recommendation of EPA, permitting authority simply transfers out of the state's hands and back to the federal level.[5]

Our conclusion is also consistent with decisions of the Seventh and Eighth Circuits, the only other circuits to have addressed the issue directly. The Seventh Circuit held that the "amendments to the [CWA] fundamentally altered the underpinnings of the *Crown Simpson* [*II*] decision" such that "an EPA objection to a proposed state permit is no longer 'functionally similar' to denying a permit." *Am. Paper Inst.*, 890 F.2d at 874 (quoting *Crown Simpson II*, 445 U.S. at 196). Emphasizing the "strong congressional intent to make the

---

[5] A statement by Senator Muskie, floor manager of the conference bill in the Senate during Senate debate on the 1977 amendments, is consistent with our reading of the statute:

> It is intended that this process be utilized to insure the rapid issuance of an effective, valid permit. The Administrator's action in objecting to a permit would generally not be subject to judicial review since it will always be followed by further administrative action. The final issuance of a permit by EPA would be subject to judicial review pursuant to [33 U.S.C. § 1369(b)(1)(F)].

123 Cong. Rec. S39,187 (daily ed. Dec. 15, 1977) (statement of Sen. Muskie).

states, where possible, the primary regulators of the NPDES system," the Seventh Circuit concluded that the CWA, as amended, "does not contemplate federal court review of state-issued permits" and, accordingly, the federal courts may not review EPA's objections to state-drafted permits before those permits have been issued by the states. *Id.* at 873, 875. Because "state courts are perfectly competent to decide questions of federal law," the "state courts may examine challenges to any pertinent EPA objections." *Id.* at 875.

The Eighth Circuit reached a similar conclusion. Determining that it lacked subject matter jurisdiction to review an EPA Regional Administrator's objection to a state NPDES permit, the court wrote:

> The crucial question here is whether the EPA Administrator has *issued or denied* an NPDES permit. . . . EPA's action here, although indicating disapproval with the City's NPDES permit as drafted, does not constitute a decision by the Regional Administrator—let alone the EPA's Administrator, to whom the Regional Administrator's decision is appealable—to issue or deny an NPDES permit. . . . The EPA's actions thus far constitute preliminary objections to the State's proposed permit.

*City of Ames v. Reilly*, 986 F.2d 253, 256 (8th Cir. 1993). The Eighth Circuit noted the administrative options that remain following an EPA objection: "[T]he State could issue its own permit, the EPA could withdraw its objections, or the EPA could issue a final NPDES permit." *Id.*; *cf. Champion Int'l Corp. v. EPA*, 850 F.2d 182, 188 (4th Cir. 1988)

(holding that when EPA files an objection for a state permit and then assumes NPDES issuing authority, EPA has not reached a final agency action subject to judicial review).

We lack jurisdiction under 33 U.S.C. § 1369(b)(1)(F) to review EPA's Objection Letter.

## III. CONCLUSION

We conclude that neither 33 U.S.C. § 1369(b)(1)(E) or (F) provides us subject matter jurisdiction to review the Objection Letter, and we dismiss SCAP's petition for review.

**DISMISSED.**